UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERVARUS L. GARY, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF DIRECTORS, KAREN CHANHLER, HEALEN, and JEFF SEYRI, <br><br> Defendants. | CAUSE NO. 3:24-CV-349-JD-JEM |

OPINION AND ORDER

Tervarus L. Gary, a prisoner without a lawyer, was given the opportunity to file an amended complaint after the court determined his original complaint did not state a claim for relief. ECF 18. He has done so. ECF 21. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In Gary's original complaint, he claimed his due process rights were violated after he received an allegedly deficient hearing for a write up at the Elkhart County Work Release Center, where he was placed as part of his criminal sentence after his probation was revoked. ECF 18 at 1. The complaint, however, did not clearly explain

how Gary was sanctioned for the write up. *Id.* at 2. Due process protections under the Fourteenth Amendment are required only when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Gary was, therefore, instructed to file an amended complaint that included information about the sanctions he received for the write up.

In the amended complaint, Gary explains that after he was found guilty at the allegedly deficient hearing, he was sentenced to community service inside the building, he was restricted to the building, and he lost privileges—including visits with his kids and his dying mother. He alleges that for his community service, the officers took turns humiliating him by coming up with things to clean that hadn't been done in years, if ever. There is a facility cleaning crew that inmates sign up for in exchange for community service hours. But instead of assigning certain jobs to the cleaning crew, officers reserved those jobs especially for Gary to humiliate him. For example, he had to clean the dorm showers after bodily fluids and semen were left behind. And one officer had him clean the drain in the garage where all the mop and dish water gets dumped. There was food caked up over the years, and he had to scrape the drain clean.

These sanctions did not extend the duration of Gary's criminal sentence, nor were they an atypical and significant hardship when compared to ordinary prison life. Prisoners generally do not have a liberty interest in phone, visitation, or commissary privileges. *See Lekas v. Briley*, 405 F.3d 602, 610-12 (7th Cir. 2005); *Fiorentino v. Biershbach*, 64 Fed. Appx. 550, 552 (7th Cir. 2003) (affirming dismissal because plaintiff's allegations

2

that he was "deprived of various rights and privileges enjoyed by the general prison population such as smoking, watching TV, listening to the radio, using the telephone, accessing the law library, and participating in recreational and religious programs" did not constitute a protected liberty interest). And being confined to the building does not come close to the type of restrictions that trigger the Fourteenth Amendment. "When an inmate is placed in conditions more restrictive than those in the general prison population . . . his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013). Cases where a liberty interest has been found involve long periods in segregation—usually more than six months—where an inmate could be confined to his cell for up to 23 hours a day. *Compare Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (concluding a term of 240 days of segregation could constitute a liberty interest, depending on the conditions of confinement), *with Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (no liberty interest for 60 days in segregation) and *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005) (no liberty interest for 90 days in segregation). Gary's confinement to the building does not approach that level of severity.

    The additional cleaning duties, which Gary describes as humiliating, also do not trigger due process protections. He admits that the regular cleaning crew could have been assigned these jobs, so it is perplexing why he thinks making him do the cleaning violates the Constitution. Admittedly, the jobs are unpleasant. But semen and bodily

3

fluids cannot remain in the shower indefinitely, and the garage drain will eventually have to be cleaned by someone.

For completeness, the court considers whether Gary could proceed on a claim under the Eighth Amendment for cruel and unusual punishment based on the humiliation Gary says he was subjected to. The Eighth Amendment prohibits the unnecessary and wanton infliction of physical or psychological pain. *Beal v. Foster*, 803 F.3d 356, 357–58 (7th Cir. 2015); *see Chatman v. Ill. Dep't of Corr.*, 685 F. App'x 487, 489 (7th Cir. 2017) ("Prison authorities violate the Eighth Amendment when they treat inmates in a way that is motivated by a desire to harass or humiliate or intended to humiliate and cause psychological pain." (quotation marks omitted)). But the Constitution is not a civility code that requires prison staff to use "genteel language and good manners." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). "The test for what constitutes cruel and unusual punishment is an objective one. It is not the actual fear of the victim, but what a reasonable victim would fear." *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009) (quotation marks omitted). Thus, "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal*, 803 F.3d at 358. The harassment must reach such a level that it "inflicted significant psychological harm" on Gary. *Id.* at 357. And here the harassment constituted of making Gary do unpleasant jobs and, perhaps, verbal taunting. This is not enough.

This amended complaint does not state a claim for relief. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726,

4

738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED on October 9, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT